## TUCKER v. TUCKER.

1. ESTOPPEL—MORTGAGES.—Assignor of a note and mortgage, assignee having notice that mortgagor had only a leasehold estate, or such notice as would put on inquiry, is not estopped from setting up that mortgagor had only leasehold estate, because she had purchased the fee since expiration of leasehold estate, in absence of showing that she assigned the note and mortgage in contemplation of purchasing the fee, or that she failed to give notice of any existing right which she then possessed.

2. SECONDARY EVIDENCE—APPEAL—DISCRETION.—Ruling of Circuit Judge that sufficient foundation had been laid for reception of secondary evidence is not appealable unless there is abuse of discretion, which does not appear in this case.

Before KLUGH, J., Anderson, May, 1904. Affirmed.

Action by W. H. Tucker against J. B. Tucker, administrator of Jas. Brown, C. E. Irby and W. W. Smith. The following is the Circuit decree:

"One James H. Brown, on 1st January, 1886, made his note for $50 in favor of Mrs. C. E. Irby, and executed a mortgage of twelve acres of land in Anderson County to secure the payment thereof. On 1st June, 1892, Mrs. Irby

assigned the note and mortgage to W. W. Smith, in the following terms, indorsed on the mortgage:

" 'For value received I hereby assign, transfer and set over the within mortgage and the note—it was given to secure to W. W. Smith.'

"On May 1st, 1893, W. W. Smith assigned the same note and mortgage in identical terms to W. H. Tucker, The description of the land in the mortgage is as follows: 'Twelve acres of land, more or less, situated in the county of Anderson and State aforesaid, on the public road leading from Anderson to Greenille C. H., bounded on the north by lands of James Martin, on the east by James Martin, on the south and west by lands of Mrs. C. E. Irby, more fully described in a deed from D. H. Hammond to James H. Brown.' The deed from Hammond to Brown thus referred to is in evidence, and describes the lands as 'a portion of the Wadsworth survey, bounded,' etc. The date of this deed is November 12th, 1885, and it was duly recorded. Hammond derived his title to the land from Harvey Waldrop through a deed dated May 16th, 1879, and recorded January 22, 1881, which refers to 'the old deeds made to said Waldrop by James Martin and Jeremiah Tims.' 'The old deeds' thus referred to appear to be lost and there is no evidence that they were ever recorded, but it appears from the testimony of R. P. Martin and J. H. Elrod, the one a son and the other a grand-son of James Martin, who reside in the neighborhood of the said land, that James Martin conveyed twelve acres of this land to Jeremiah Tims more than forty years ago, before the Civil War, that Tims conveyed to Waldrop the ten acres, and that James Martin conveyed two more acres of the original tract to Waldrop about the year 1870. The interest of James Martin in the said land was derived through a deed dated March 18, 1836, and recorded September 2, 1839, from Benjamin F. Sloan and George Seaborn, executors of the will of Gen. John Baylis Earle, deceased, by which they *leased* to James Martin, his heirs and assigns, for the term of sixty-five years, a tract of 470 acres, 'being land of the

estate of Thomas Wadsworth, deceased, left for the benefit of his poor school.' *By the recitals of another deed in evidence,* that of R. G. Wallace and others, as trustees to Mrs. Beulah C. Brown, it appears that this land was granted to Thomas Wadsworth on May 4, 1785, and that it was leased from the treasurer of the Wadsworth Poor School by Gen. Earle, on March 20, 1831.

"The said twelve acres of land was mortgaged by James H. Brown, signing himself as J. H. Bryant, on August 8, 1891, to the Sylvester Bleckley Company, and this mortgage has been assigned to W. H. Tucker, the plaintiff herein. The Hammond deed is referred to also for the description and identification of land. The amount for which the said mortgage was given was $66, with interest at eight per cent., payable annually; and there was paid on it $11 on May 2, 1892. It appears that W. H. Tucker took possession of the land at the time the mortgage was assigned to him and received the rents and profits therefrom for seven years.

"It should have been stated above that there were credits on the Irby mortgage debt of $5 paid on December 25, 1886, $5 on December 26, 1887, $20 on December 12, 1888, and $3.50 on April 15, 1889; and that said debt bore interest at ten per cent. per annum until paid in full.

"In the year 1892, the trustees of the Wadsworth Poor School had the tract of land of which the twelve acres involved in this suit are a part, resurveyed, and by a deed bearing date January 9, 1893, conveyed the same to Mrs. Beulah C. Brown; and on August 23, 1890, Mrs. Brown conveyed the twelve acres in question to Mrs. C. E. Irby, who is now in possession under said conveyance.

"This action is brought against the administrator of James H. Brown, who died in October, 1901, and Mrs. C. E. Irby and W. W. Smith. It is alleged that the said Irby and Smith each guaranteed the payment of the mortgage debt first above mentioned at the time the same was assigned by them, respectively. The plaintiff seeks a judgment for the amount of the two mortgage debts against the defend-

ants, Irby and Smith, on their alleged guarantees of the first mentioned mortgage, and for foreclosure and sale of the mortgaged premises. It will be observed that the heirs of James H. Brown are not made parties, but no question is made upon that ground.

"Only Mrs. Irby answered the complaint. She denies that either she or W. W. Smith guaranteed the payment of the mortgage assigned by them, alleges that Brown had only a leasehold of the mortgaged premises which the plaintiff well knew, that the same expired in the year 1900, and that the said mortgagees now have no lien on the land, that she now owns said land under the deed of Beulah C. Brown; for a second defense, she alleges that the plaintiff is guilty of *laches,* in that he held the said mortgage for more than six years and until it ceased to be a lien by reason of the expiration of the lease above mentioned, although he well knew that the said lease would expire in the year 1900, and failed and neglected to foreclose the same; for a third defense, that the action was not brought within six years from the time the note was due; and lastly, that the plaintiff had possession of the mortgaged land for eight years, and during that time he received the rents, which more than paid the mortgage debts.

"The case was heard by me on the pleadings, the testimony taken by a referee and argument of counsel.

"The evidence does not show that there was any contract or guaranty independent of or separate from the written assignments endorsed on the mortgage. No guaranty is expressed in the assignments, nor can any be implied. *Walker* v. *Scott,* 2 N. & McC., 268; *Tryon* v. *DeHay,* 7 Rich., 12.

"It is clear that the interest of Brown in the land mortgaged was only a leasehold. Of this fact the plaintiff had constructive notice through the registry of the antecedent deeds in the chain of title, and even if he, living as he did in the neighborhood of the mortgaged premises, had not actual notice, the references in the very mortgages which he took

by assignment to the Hammond deed and the recital in that deed were sufficient to put him on inquiry leading easily to the knowledge of the fact. The lease having expired, the land is no longer subject to the lien.

"It is contended by the plaintiff that Mrs. Irby's acquisition of the title to the mortgaged premises after her assignment of the mortgage, which contained a clause of general warranty, inured to the benefit of plaintiff; and that she is now estopped by the covenants contained in said warranty. But the said warranty was not her warranty. We have seen that she cannot be held even to have guaranteed the payment of the mortgage debt, still less the mortgagor's title. Her assignment carried with it whatever right she had under the mortgage, and nothing more. The estate of the mortgagor was a leasehold which expired by the terms of the lease itself, and was no whit defeated or diminished by her act in purchasing the fee simple estate left after the expiration of the lease. Not being a party to the mortgagor's warranty, and having done nothing to impair the rights of the plaintiff as assignee of the mortgage, she is not estopped to assert her title.

"Since the defendant is not bound as guarantor of the debt or as warrantor of the title, the defense of laches can hardly arise or be sustained in her behalf. Nor, in my opinion, is the statute of limitation at bar. Under the view which I have taken of the liability of Mrs. Irby and Mr. Smith, the liability of the plaintiff to account for the rent of the mortgaged premises does not concern them. The administrator of Brown, the mortgagor, has not answered, and makes no question against the plaintiff's claim. The plaintiff admits having received rent from the mortgaged land, but testifies that the same was used by Brown and that none of it was applied to the mortgage debt. There is no evidence in rebuttal of this testimony. Under the evidence he is only liable for the rent actually received, not for rental value; and his account of the disposition of what was so received must be taken as the fact. The amount due on the note set out in

the first cause of action is $76.90, and that due on the note set out in the second cause of action $110.64.

"It is ordered and adjudged, that as to Mrs. C. E. Irby and W. W. Smith, the complaint be dismissed with costs; and that the plaintiff have judgment against J. B. Tucker, as administrator of James H. Brown, deceased, for the sum of $187.54, with leave to issue execution therefor.

"It is further adjudged, that the mortgages set forth in the complaint are no longer liens on the real estate described therein."

The plaintiff appeals on the following exceptions:

"I. Because the Circuit Judge erred in not sustaining the objections of plaintiff to the whole of the testimony of R. P. Martin and J. H. Elrod, and erred in predicating his decree upon any part thereof, because said testimony was incompetent and irrelevant, and had been objected to when offered, on the grounds: (a) That Mrs. Irby, having assigned in writing a mortgage deed which contained a clause of warranty of title in fee, she was estopped to introduce any evidence to show a leasehold estate in the mortgagor. (b) That this testimony was largely hearsay. (c) That it was incompetent to prove by parol the existence and the termination of a lease, no foundation having been laid for the introduction of secondary evidence, and no notice to produce the lease being given, and no evidence of its loss being offered. (d) That it was leading. (e) That it was incompetent to prove by parol evidence the contents of deeds describing the location, boundaries and amount of lands where the foundation had not been laid for the introduction of secondary evidence.

"II. Because the Circuit Judge erred in finding as follows: 'It appears from testimony of R. P. Martin and J. H. Elrod, one a son and the other a grand-son of James Martin, who reside in the neighborhood of said land, that James Martin conveyed ten acres of this land to Jeremiah Tims more than forty years ago, before the Civil War; that Tims conveyed to Waldrop the ten acres, and that James Martin conveyed two

acres more of the original tract to Waldrop about the year
'70.' There being no competent evidence to sustain such find-
ing: (a). Mrs. Irby is estopped by her assignment of the
mortgage from attacking the fee simple title of the mortgage.
(b) Because no sufficient foundation was laid to entitle de-
fendant to offer evidence of the contents of the deeds from
James Martin to Jeremiah Tims, and from Tims to Harvey
Waldrop, and from James Martin to Harvey Waldrop, there
being no sufficient foundation laid for the introduction of
secondary evidence of the contents of such deeds.    (c)
Because such evidence was hearsay, and because the ques-
tions which elicited it were leading.

"III. Because the Circuit Judge erred in finding that:
'The interest of James Martin in said land was derived
through a deed dated March 18, 1836, and recorded Sep-
tember 2, 1839, from Benjamin Sloan and George Seaborn,
executors of the will of Gen. Baylis Earle, deceased, by which
they leased to James Martin, his heirs and assigns, for the
term of sixty-five years, a tract of 470 acres, being land of
the estate of Thomas Wadsworth, deceased, left for the bene-
fit of his poor school; there being no competent evidence upon
which to predicate said finding, in that: (a) The deed from
said Sloan and Seaborn, as executors to Baylis Earle, was not
put in evidence.    (b) No proof of its loss was offered.    (c)
No notice to produce this deed was given to plaintiff, along
with notice as to other deeds.    (d) No sufficient foundation
was laid for the introduction of secondary evidence of the
contents thereof.    (e) No notice was given that a certified
copy of said deed would be offered in evidence.

"IV. Because the Circuit Judge erred in finding as fol-
lows: 'By the recital of another deed in evidence, that of
R. G. Wallace and others, as trustees, to Mrs. Beulah C.
Brown, it appears that this land was granted to Thomas
Wadsworth on May 4, 1785, and that it was leased from
the treasurer of the Wadsworth Poor School by General
Earle on March 20, 1831,' because: (a) No such deed is in
evidence.    (b) If such deed was offered in evidence, it was

incompetent because Mrs. Irby was estopped to deny the
title of the mortgagor. (c) Because no foundation was laid
for the introduction of a copy of that deed, and no notice was
given to produce it. (d) Because, if it were permissible in
evidence, it would be incompetent evidence to prove a grant
by the State. (e) Because, even if the deed were in evi-
dence, it would not be competent evidence to prove a lease.

"V. Because there is absolutely no competent evidence
that this land, covered by this mortgage, was ever a part of
the Wadsworth lease, and there is no competent evidence
that such a lease ever existed, or if it existed, that it has
expired, and the Circuit Judge erred in not so holding; and
because the deed of R. G. Wallace and others, trustees to
Mrs. Beulah Brown, is not competent evidence, for the reason
that Mrs. Irby is estopped to deny the validity of the title
of the mortgagor, whose mortgage she assigned in writing,
which mortgage contained a clause of warranty, and there is
no evidence to identify this land as a part of that conveyed
to Mrs. Beulah Brown.

"VI. Because the Circuit Judge erred in holding that
'The evidence does not show that there was any contract of
guaranty independent of the written assignment endorsed
on the mortgage;' the testimony of W. H. Tucker and the
admission of Mrs. Irby, showing that there was such guar-
anty, and the evidence of W. W. Smith, showing that he
assigned to W. H. Tucker, with the same guaranty given to
him by Mrs. Irby.

"VII. Because the Circuit Judge erred in holding that no
guaranty could be inferred from the written assignments;
there being no saving clause in the assignments, such as
'without recourse on me,' or the like.

"VIII. Because the Circuit Judge erred in holding, 'It is
clear that the interest of Brown in the land mortgaged was
only leasehold;' whereas, there is not a particle of competent
evidence that this land was ever a part of the leased land,
and it being incompetent for Mrs. Irby to introduce such evi-
dence.

"IX. Because the Circuit Judge erred in holding that 'Plaintiff had constructive notice through the registry of antecedent deeds in the chain of titles;' whereas, it is submitted, there is no competent evidence of any chain of title by which it appears that this lot of land was held on lease, nor is there anything whatever in the mortgage itself to suggest a doubt of the truth of the warranty therein contained.

"X. Because the Circuit Judge erred in holding that 'The lease having expired, the land is no longer subject to the lien,' for the reasons: (a) There is no competent evidence that this land was ever a part of the Wadsworth lease. (b) Even if it be held to be proved that it was covered by the Wadsworth lease, there is no competent evidence as to the time of the beginning and the expiration of the Wadsworth lease.

"XI. Because it being undisputed evidence that Mrs. Irby assigned in writing, without any clause of reservation, the mortgage sought to be foreclosed, which mortgage contains a clause of warranty of title, it was error in the Circuit Judge not to hold that Mrs. C. E. Irby was estopped to deny that the mortgagor's estate was that of a fee simple, and is estopped to set up a leasehold estate in the mortgagor.

"XII. Because it being undisputed evidence that Mrs. Irby had, subsequent to the assignment by her, in writing, for valuable consideration of the mortgage sought to be foreclosed, acquired the title to the land covered by the mortgage, it was error on the part of the Circuit Judge to hold that such acquisition of title did not inure to the benefit of plaintiff, and render the land subject to the lien of the mortgage.

"XIII. Because the Circuit Judge erred in holding that the warranty contained in the mortgage was not the warranty of Mrs. Irby, but should have held that it was her warranty.

"XIV. Because the Circuit Judge erred in not holding that even if the warranty was not hers, Mrs. Irby, by assigning the mortgage in writing for valuable consideration, had estopped herself to deny the correctness of the warranty.

"XV. Because the Circuit Judge erred in holding, 'The estate of the mortgagor was a leasehold which expired by the terms of the lease itself, and was no whit defeated or diminished by her act in purchasing the fee simple estate after the expiration of the lease;' because: (a) There is no competent evidence that the mortgagor had only a leasehold. (b) There is no competent evidence that the lease, if it ever existed, had expired. (c) The mortgagee having assigned in writing and for valuable consideration the mortgages sought to be set up, and having concealed from her assignee that the estate was one of leasehold, has estopped herself to deny that the estate was, as appears upon the face of the paper assigned and in the general clause of warranty, an estate in fee simple.

"XVI. Because the Circuit Judge erred in holding that 'Mrs. Irby, not being a party to the mortgagor's warranty, and having done nothing to impair the rights of the plaintiff as assignee of the mortgage, she is not estopped to assert her title;' whereas, it is submitted: (a) That it appears from the evidence that she is a party to the mortgagor's warranty. (b) That by concealing from her assignee that this was leasehold property, she misled him to his injury, and thereby impaired the rights of plaintiff as assignee, and is now estopped to assert her title against him.

"XVII. Because the Circuit Judge erred in ordering that the complaint be dismissed as to Mrs. Irby and W. W. Smith, but should have given judgment against them on the mortgage debt, which they had assigned in writing for value received, and guaranteed its payment, and which was never repaid to plaintiff.

"XVIII. Because the Circuit Judge erred in finding that there was due on the mortgage of James H. Brown to Mrs. Irby, assigned to plaintiff, only the sum of $76.90; whereas, he should have found that there was due thereon the sum of $108.09, at the time of the filing of his decree; and in finding that the amount due on both mortgages was $187.54;

whereas, he should have found that there was due on both mortgages the sum of $218.73.

"XIX. Because the Circuit Judge erred in not giving judgment against Mrs. C. E. Irby and W. W. Smith for the amount due on the Brown mortgage, they having assigned the same in writing for valuable consideration, and having guaranteed its payment.

"XX. Because the Circuit Judge erred in dismissing the complaint as to Mrs. C. E. Irby and W. W. Smith, because they having received valuable consideration for the assignment of the note and mortgage, and having guaranteed the payment thereof, and Mrs. Irby having concealed from her assignee, and he being ignorant that the mortgagor had only a leasehold interest in the land, and Mrs. Irby having acquired title to this land, it would be grossly inequitable to permit them to retain the consideration of the assignments; and to permit Mrs. Irby to hold the land absolved from the lien of the mortgage, without requiring them to pay the mortgage debt.

"XXI. Because the Circuit Judge erred in holding that the title of James H. Brown in the mortgaged premises was only that of a leasehold, since it appears by the evidence introduced by Mrs. Irby that this land was conveyed in fee simple to D. H. Hammond by Harvey Waldrop, by a deed dated November 19, 1879, and recorded in R. M. C. office January 22, 1881, and Hammond having conveyed the same land to J. H. Brown by deed dated November 12, 1885, recorded in R. M. C. office, November 15, 1885, and Brown having, in 1886, mortgaged the said land to Mrs. C. E. Irby, and in 1892, to Sylvester Bleckley Company, which mortgages were recorded, it is evident that J. H. Brown, the mortgagor, and those under whom he claimed, had continuous, open, notorious and adverse possession thereof, under claim of title in fee simple, for more than twenty years, and had acquired title by prescription.

"XXII. Because the Circuit Judge erred in considering and predicating his decree upon the recitals contained in the

20—72

deed from R. G. Wallace *et al.,* trustees to Mrs. Beulah C.
Brown, for the reason that the deed was not properly before
the Court; and that: (a) The original deed was not offered
in evidence. (b) No notice to produce was given. (c)
No proof of its loss was offered. (d) No foundation was
laid for the introduction of a copy, or of other secondary
evidence of its contents. (e) It was not competent for Mrs.
Irby to offer such evidence designed to assail the mortgagor's
title.

"XXIII. Because the Circuit Judge erred in holding that
the reference in the mortgages assigned, to the Hammond
deed and the recitals in that deed, were sufficient to put plain-
tiff on inquiry, and that they gave him constructive notice
that this land was a part of the Wadsworth lease; because
there was nothing in the recital of the mortgage to suggest a
doubt that the warranty of title therein contained was false,
and plaintiff had right to rely upon that warranty, and to
trust that the assignor would not assign to him a mortgage
purporting to be on land held in fee simple, but which was
only a leasehold estate, without giving him notice thereof."

*Messrs. Bonham & Watkins,* for appellant, cite: *As to
estoppel:* 67 S. C., 211; 11 Ency., 421; 42 S. C., 351; 21
S. C., 209; 19 S. C., 216; 64 S. C., 310; 27 S. C., 187; 10
S. C., 462; 2 Strob., 309; 3 McC., 412; 17 S. C., 592; 59
L. R. A., 748. *Twenty years possession under claim of fee
gives title to Wadsworth School lands:* 40 S. C., 168; 69
S. C., 159. *As to laches:* 64 S. C., 296.

*Messrs. Breazeale & Rucker,* contra, cite: *Effect of recitals
in deed:* 20 Ency., 461, 463; 43 Am. Dec., 126; 25 S. C.,
519; 26 S. C., 160. *Guarantee of assignment cannot be
implied:* 2 N. & McC., 268; 7 Rich., 12; Jones on Mtgs., sec.
475; Hilliard on Mtgs., 363. *As to laches:* 43 S. C., 436;
62 S. C., 89; 67 S. C., 80. *Mortgagor in possession must
apply rents to payment of mortgage debt:* Crabb's Law of
Real Est., sec. 2244; Jones on Mtg., secs. 1114, 1118, 1124.

August 2, 1905.   The opinion of the Court was deliv-
ered by

MR. JUSTICE GARY.   This is an action to foreclose two
mortgages.   The record contains the following statement:

"On May 24th, 1902, W. H. Tucker filed in the Court
of Common Pleas for Anderson County, his complaint to
foreclose two mortgages, as follows: A mortgage of twelve
acres of land, executed by James Brown, sometimes known
as James Bryant, to Mrs. C. E. Irby, on 1st January, 1886,
and by her assigned to W. W. Smith, in writing, for valua-
able consideration, on 1st day of June, 1892, and by him
assigned in writing, for valuable consideration, to W. H.
Tucker, on 1st day of May, 1893; also, a mortgage executed
by said James Brown, signing himself as James Bryant, to
Sylvester Bleckley Company, on the same tract of land, on
August 6th, 1891, for the sum of $66, with interest from
date at eight per cent. per annum, which mortgage was, for
value received by them, duly assigned, in writing, by Syl-
vester Bleckley Company, to W. H. Tucker, on 26th June,
1893; various payments are credited on the mortgages.
That said James Brown died some time in October, 1901,
and J. B. Tucker was duly appointed administrator of his
estate, which consisted solely of this tract of land.   W. H.
Tucker began his action May 24, 1902.   Mrs. C. E. Irby
answered the complaint, setting up the defenses, 1st. That
the said James H. Brown had only an interest in the land
mortgaged, till the expiration of the lease known as the
Wadsworth lease; that said lease expired in 1900; that
plaintiff knew these facts when the assignment was made to
him.   2d. Laches of plaintiff, and payment.   3d. The statute
of limitations.

"The original deed from Sloan and Anderson, as execu-
tors of the estate of James Martin, and from R. G. Wallace
*et al.,* trustees to Mrs. Beulah Brown, were not offered in
evidence, but certified copies thereof were offered, and no
notice to produce the original was given plaintiff or his attor-

neys, and no proof of loss was made, and no foundation laid
to introduce secondary evidence of the contents.

"It is fair to state that defendant's attorneys think that it
was understood at the reference that they could offer these
certified copies without objection.  But plaintiff's attorneys
think the only agreement between counsel was, that plain-
tiff's attorneys would not require defendant's attorneys to
prove the execution of their deeds.

"It was referred to the judge of probate, as special
referee, to take the testimony and ascertain the amount due
on the mortgage debts.  Upon the evidence reported by
him the case was heard by Hon. J. C. Klugh, Circuit Judge,
who rendered a decree, filed June 10th, 1904, dismissing
the complaint as to Mrs. C. E. Irby and W. W. Smith, and
adjudging that the mortgages set forth in the complaint are
no longer liens on the real estate described in the complaint.
In due time plaintiff gave notice of his intention to appeal
from said decree."

The facts are more fully set out in the decree of his
Honor, the Circuit Judge, which, together with the excep-
tions, will be incorporated in the report of the case.

We will first consider these exceptions assigning error on
the part of the Circuit Judge, in ruling that Mrs. C. E. Irby
was not estopped from interposing the plea, that she ac-
quired title to the land after the assignments of the
mortgages.  Mrs. Irby was a stranger to the mort-
gage executed by Brown to Sylvester Bleckley Co.,
which was assigned to the plaintiff.  There was, therefore,
nothing in that transaction to prevent her from purchasing
the land.

This phase of the question does not call for further discus-
sion, and we proceed to consider the effect of the transactions,
in which she took part, before becoming the purchaser of the
land.  The testimony does not show that W. W. Smith did
not have notice of the fact that Brown held only a leasehold
estate, at the time Mrs. Irby assigned the note and mort-
gage to him; and he says: "I never expected to have any

recourse on Mrs. Irby." He, certainly, was not misled by her.

We are furthermore satisfied that the plaintiff, at the time W. W. Smith assigned the note and mortgage to him, either had actual knowledge of the fact that Brown had only a leasehold estate, or that he had notice of such facts as were sufficient to put him on inquiry; which, if pursued with due diligence, would have led to knowledge of Brown's interest, and this was equivalent to notice. The assignment of the note and mortgage, and the purchase of the land by Mrs. Irby, were entirely separate and distinct transactions. There is no testimony tending to show that she assigned the note and mortgage, in contemplation of purchasing the land and thereby defeating the lien of the mortgage; nor that she failed to give notice of any existing right which she then possessed. The principle is well settled in this State, that the assignee of a note and mortgage cannot invoke the equitable doctrine of purchaser for valuable consideration without notice, when his assignor had notice. *Patterson* v. *Rabb,* 38 S. C., 138, 17 S. E., 463; *Westbury* v. *Simmons,* 57 S. C., 467, 35 S. E., 764. Nor did the assignment import a guaranty. In the case of *Colburn* v. *Mathews,* 1 Strob., 232 (affirmed in *Jones* v. *Garlington,* 44 S. C., 536, 22 S. E., 731), the Court says: "That in the sale of an unnegotiable security, there is no implied warranty of either its goodness or money value, is too plain a proposition to require law to sustain it." It cannot be successfully contended that there was any fact stated in the assignment (which was in the usual form), calculated to mislead the assignee. As said by this Court, in the case of *Westbury* v. *Simmons,* 57 S. C., 467, 480, 35 S. E., 764: "The form of the assignment by Rentz to Rion was such as is usually employed in transferring the title to non-negotiable instruments, and we see nothing upon the face thereof that could reasonably have been expected to mislead Simmons, he being presumed to know that the assignee of a non-negotiable chose in action

takes it subject to the set-offs and defenses existing at the time of the assignment."

In 4 Cyc., 83, it is said: "By the mere fact of assignment, the assignor further guarantees, that he will not interfere with the chose thereafter, and if he does interfere, to the damage of the assignee, he renders himself liable to the assignee for any damage resulting from such interference." Conceding that the principle prevails in this State, it is not applicable to the facts of the case under consideration. If the action for foreclosure had been instituted while the leasehold estate was in existence, and Mrs. Irby had attempted to show that the mortgagor had but a leasehold estate, it might be that this would be regarded as an interference with the collection of the claim which she had assigned. She, however, does not contest the fact that the mortgagor had a leasehold estate, but sets up the plea that it has expired. The admission that the mortgagor had a leasehold estate at the time the note and mortgage were assigned, is not inconsistent with the defendant's contention that the leasehold estate, although existing at that time, has since expired and ceased to have any legal existence.

We will next consider those exceptions assigning error on the part of the Circuit Judge in ruling that the deeds therein mentioned were properly introduced in evidence. When the deeds were offered, the appellant's attorneys admitted the execution thereof, but objected to their introduction, on the ground that Mrs. Irby was estopped from setting up title to the land, or from disputing the title of the mortgagor. The views hereinbefore expressed in considering the other exceptions show that this ground is untenable.

The next question for consideration is whether the presiding Judge erred in his ruling as to the testimony of R. P. Martin and J. H. Elrod. The record shows that the following took place during the examination of R. P. Martin as a witness for the defendants: "Q. Did Harvey Waldrop ever own that land? Mr. Bonham objects to this question on the ground that it is incompetent for Mrs. Irby to introduce

any testimony intended to attack the validity of the title of J. H. Brown, because her assignment of her note and mortgage on that land estops her from so doing. I object on the further ground that Waldrop's deed is the best evidence of his ownership of the land, and if it be claimed that that deed be lost, no sufficient foundation has been laid for the introduction of the contents of the lost deed. Taken subject to objection. A. Yes. Q. Who did Harvey Waldrop get that land from? Mr. Bonham objects on same grounds as stated above."

The appellant's attorneys objected to other testimony of this witness on similar grounds.

When J. H. Elrod was on the stand as a witness, like questions were propounded and similar objections interposed by the appellant's attorneys.

It will be observed that objection was made to the admissibility of the evidence on two grounds: 1. Because Mrs. Irby was estoped from setting up title to the land; and 2, because the deeds were the best evidence of title, and no sufficient foundation had been laid for the introduction of secondary evidence of the contents of the lost deeds. The first objection has already been disposed of.

The ruling of the Circuit Judge that sufficient foundation had been laid for the introduction of secondary evidence is not appealable unless there was an abuse of discretion, which does not exist in this case. *Hobbs* v. *Beard,* 43 S. C., 370, 21 S. E., 305.

Lastly, we will consider the exeptions raising the question, whether the Circuit Judge erred in ruling that the mortgagor had simply a leasehold interest in the land—the appellant contending "that the mortgagor, and those under whom he claimed, had continuous, open, notorious and adverse possession of the land under claim of title in fee simple, for more than twenty years, and had acquired title by prescription." The preponderance of the testimony shows, as contended at first by the appellant, that the mortgagor had only a leasehold estate in the land.

These conclusions practically dispose of all the questions involved under the appeal.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.